| | | |
|---|---|---|
| **GLENN E. DORRIS** | * | IN THE CIRCUIT COURT |
| and | * | FOR HARFORD COUNTY, MARYLAND |
| **SUSAN L. DORRIS** | * | |
| *Plaintiffs* | * | |
| v. | * | |
| **ACCOUNTS RECEIVABLE MANAGEMENT, INC.** | * | Case #: 12-C-11- 1532 |
| 155 Mid Atlantic Parkway Thorofare, NJ 08086 | * | |
| Serve on: Stuart R. Blatt 110 West Road, Suite 222 Towson, MD 21204 | * | |
| *Defendant* | * | |

FILED 2011 JUN -9 P 1:14 CLERK OF CIRCUIT CT. HARFORD COUNTY, MD

## COMPLAINT AND JURY TRIAL DEMAND

This suit concerns a collection agency that engages in unfair, deceptive and harassing practices to attempt to collect debts, and which did so against Plaintiffs, including Susan L. Dorris who did not even allegedly owe any debt to Defendant, as part of an effort to harass the person who may actually be indebted into paying.

Plaintiffs seek recovery of actual damages, statutory damages, costs, and reasonable attorneys fees, from Defendant for violations of the federal Fair Debt Collection Practices Act, (FDCPA), 15 U.S.C. § 1692, Maryland Ann. Code, Commercial Law Article (CL) § 14-1402-03 (Maryland Consumer Debt Collection Act (MCDCA)).

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 15 U.S.C. § 1692k(d) (FDCPA) and CL § 14-1402 (MCDCA).

2. Venue is proper in this Court because the suit is based on Defendant's acts that took place in Harford County, and due to Defendant's regular business activities in the County.



## PARTIES

3. Plaintiff **Glenn E. Dorris** is an individual male who is not a minor, and who lived at all times relevant to this suit at his home at 1927 Thomas Run Circle, Bel Air, Maryland 21015.

4. Plaintiff **Susan L. Dorris** is an individual female, and mother of Glenn Dorris, who lived at all times relevant to this suit at her home at 1834 Hamlet Place N., Bel Air, Maryland 21015.

5. Defendant **Accounts Receivable Management, Inc.** (ARM) is a debt collector, with its primary office at 155 Mid Atlantic Parkway, Thorofare, NJ 08086, and which regularly collects consumer debts against consumers in Harford County, MD and throughout the U.S.

6. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), a 'collector' as defined by Maryland law, and was attempting to collect a consumer "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5), and as defined by Maryland law.

## FACTS ALLEGED

### ARM collection letter and calls to Plaintiff Glenn Dorris in July and August of 2010

7. On July 9, 2010 ARM sent a debt collection letter to Glenn Dorris's home in Bel Air, MD, attempting to collect a Citibank/Home Depot account where $2,069.86 was allegedly due.

8. ARM called Glenn Dorris numerous times attempting to collect a Home Depot account that he had with Citibank.

9. ARM called Glenn Dorris's cell phone on July 23, 2010 at 1:42 PM from 866-932-6764.

10. During the Friday 7/23/2010 call from an ARM collector identified as "Karen," Glenn Dorris asked "Karen" to call back on Monday 7/26/2010 at about noon.

11. ARM called Glenn Dorris's cell phone about five times on Monday July 26, 2010 starting at about noon but left no message during those noontime calls, and then called two more times on July 26, 2010 at 12:20 PM and 2:30 PM during which the caller did reach Glenn Dorris.

12. ARM called Glenn Dorris's cellular phone number on August 5, 2010 at 8:25 AM, and on August 6, 2010 at 4:08 PM, both times from 866-932-6741.

13. ARM's calls to both Plaintiffs were all initiated and made with an "automatic telephone dialing system" as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a).

### July 26, 2010 calls from "Karen" to Glenn Dorris

14. "Karen" called Glenn Dorris on his cell phone number on Monday 7/26/2010 at about 12 noon, but he could not talk right then and did not answer the phone, and "Karen" immediately hung up and called back about 4 or 5 times in the next 5 to 10 minutes, failing to identify herself or ARM or to leave any message.

15. On July 26, 2010 "Karen" called Glenn Dorris again at about 12:20 PM, telling Glenn Dorris that she had called and spoken with his mother, Susan Dorris, and Glenn Dorris instructed "Karen" not to call his mother, and to call him back in about 2 hours.

16. "Karen" did call back at about 2:30 PM on July 26, 2010, and during a 5 minute conversation, Glenn Dorris told "Karen" that he would pay the debt in full, but simply could not pay right then, rejected a settlement offer that "Karen" made during the conversation, and told "Karen" that he was divorced so he was the only one to speak to about the account.

17. During the 2:30 PM July 26, 2010 call, Glenn Dorris asked "Karen" why she had called his mother, and "Karen" stated that his mother's number must have been on the account. Glenn Dorris told "Karen" that was false, as his parent's numbers were never on the account, and told "Karen" not to contact his parents again, and to call him again in two weeks after he got paid again.

18. Despite Glenn Dorris's explicit instruction at about 2:30 PM on July 26, 2010 not to call his mother, "Karen" nonetheless called his mother Susan Dorris at about 2:54 PM on July 26, 2010, divulged account information to Susan Dorris about the Home Depot/Citibank

3

account, and tried to get Susan Dorris to settle the Home Depot account, including getting another male employee of ARM on the phone to try to approve a settlement for 45% of the balance due on the Home Depot account.

19. At about 3:15 PM on July 26, 2010, Susan Dorris called her son Glenn Dorris, and advised him that the same woman had called her again, had disclosed his Home Depot account to her, and informed Susan Dorris that her son was arrogant and had no intentions of dealing with his debt, and had offered her (Susan Dorris) a settlement, and was provided the amount, name of the card and bank that the account was with.

20. Later the same day, July 26, 2010, Glenn Dorris called ARM and spoke to a Mrs. Connelly, who transferred him to "Karen's" supervisor, David Webb at ext. 6272, who listened to Mr. Dorris's concerns, and asserted that ARM had done nothing wrong. Mr. Dorris advised Mr. Webb that he would contact counsel before addressing anything else on the account.

21. ARM called Glenn Dorris a few times after July 26, 2010, on August 5, 2010 at 8:25 AM, and on August 6, 2010 at 4:08 PM, and he informed ARM each time that he was speaking to counsel.

### July 26, 2010 calls from "Karen" to Susan L. Dorris

22. An ARM collector, possibly named "Karen," called Susan Dorris on July 26, 2010 at about 1:00 PM EST, stating that the collector was trying to reach her son Glenn Dorris.

23. An ARM collector using the name "Karen," called Susan Dorris on July 26, 2010 at 2:54 PM, but did not identify herself or give her name to Susan Dorris.

24. During the July 26, 2010 2:54 PM call, "Karen" called and talked to Susan Dorris about her son Glenn, and said that her son was arrogant that he talked and about child support issues, and informed Susan Dorris that her son had no intentions of dealing with his debt, and disclosed to Susan Dorris that her son Glenn Dorris had a Home Depot account, asserting

4

that Glenn Dorris owed $2,069, and offered to settle the account with Susan Dorris for $900.

25. Prior to the calls from July 26, 2010 calls from "Karen," Susan Dorris did not know that her son Glenn had a Home Depot account that was allegedly in arrears for any amount.

26. During the July 26, 2010 2:54 PM call, after some further discussion, "Karen" had another unidentified man come on the phone, who also asked Susan Dorris to pay $900 to settle the Home Depot account of Glenn Dorris, to which Susan Dorris said she was sorry but she would not pay that, and they would have to get it from her son.

27. During the July 26, 2010 2:54 PM call, "Karen" asked Susan Dorris to keep what she told Susan Dorris confidential, and specifically asked her not to tell her son Glenn that "Karen" had disclosed the account information to Susan Dorris.

28. After the July 26 calls from "Karen" were over, Susan Dorris called her son Glenn the same day to advise him of the calls, and he was very upset that "Karen" had disclosed the account.

**Additional Allegations**

29. Defendant had no permission to disclose the Citibank/Home Depot account to Susan Dorris.

30. ARM's disclosure of the Citibank/Home Depot account to Susan Dorris was an invasion of Glenn Dorris's privacy, and an unfair and harassing debt collection practice.

31. ARM had adequate location information for Glenn Dorris, and did not need to contact Susan Dorris or anyone else to obtain location information for or about Glenn Dorris.

32. "Karen" did not call Susan Dorris to obtain location information about Glenn Dorris, but to try to collect a debt either faster than Glenn Dorris was willing to pay and/or in order to meet a collection quota imposed by her employer ARM.

33. ARM contacted Susan Dorris to attempt to collect a debt owed by Glenn Dorris.

34. ARM and "Karen" knew Susan Dorris did not owe the debt it was attempting to collect.

35. ARM and "Karen" knew it was illegal to disclose the Home Depot account to Susan Dorris.

36. ARM and "Karen" knew that Glenn Dorris was willing to pay the amount actually owed when they called Susan Dorris, and falsely asserted to Susan Dorris that Glenn Dorris had no intention of paying the debt in an effort to get Susan Dorris to pay the debt faster than Glenn Dorris would pay the debt.

37. "Karen" or whoever called Susan Dorris was motivated to call by a commission or other financial incentive, or to meet a quota or requirement imposed by ARM.

38. ARM knew its collection agents including "Karen" would engage in aggressive collection activity, including calls like those described herein, and ratified all of these acts and activity.

39. The debt ARM attempted to collect was a consumer debt as defined by FDCPA and MCDCA and as defined by the FTC.

### Defendant's intentional conduct and knowledge

40. Defendant intentionally and knowingly choose to make the calls to the Plaintiffs in the manner, at the times, and in the frequency in which they were made as alleged herein.

41. Defendant was aware of both the FDCPA and MCDCA when creating and implementing its collection business practices and procedures, including those responsible for and leading to or causing the conduct and violations alleged herein.

42. Defendant's owner and/or President and legal counsel knew of and approved the policies and procedures that resulted in the conduct alleged herein.

43. On information and belief, Defendant is a member of collection industry associations, and its resident agent is a past president of the National Association of Retail Collection Attorneys, so that Defendant is well aware of all laws applicable to collections and calling.

44. Defendant's violations were not a result of errors, but due to intentional conduct, but even if due to any error, Defendant did not maintain procedures reasonably adapted to avoid any such error.

## Damages

44. Plaintiff Glenn Dorris was very and even extremely annoyed, upset and frustrated by the collection calls that were (1) made to his mother who did not know about his alleged debt to Citibank/Home Depot, (2) made to his mother without his knowledge, (3) made to his mother about a debt she did not even allegedly owe to Citibank, and which she was not aware of previously, (4) made to his mother even after he told ARM not to call his mother, (5) made to him at his work in a repeated and annoying manner, and (6) made illegally.

45. As a result of Defendant's actions, Plaintiff Glenn Dorris suffered damages, including extreme annoyance and frustration and emotional stress at the repeated calls to both himself and his mother, having to spend extra time explaining the account, and statutory damages.

46. As a result of Defendant's actions, Plaintiff Susan Dorris suffered damages, including annoyance, confusion and stress at the repeated calls about a debt she did not even allegedly owe, and statutory damages.

47. Plaintiffs will continue to suffer damages if the collection calls continue to be made.

**COUNTS 1-4 Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692**

Plaintiffs incorporate herein for all the following Counts the paragraphs above, and allege that the Defendant collector violated the following FDCPA provisions:

48. **COUNT 1:** 15 U.S.C. § 1692b(1). Defendant communicated with a person other than the consumer allegedly owing the debt, and failed to identify itself, and failed to state that it is confirming or correcting location information concerning the consumer. Defendant violated this section at least twice in 2 calls to Susan Dorris on July 26, 2010.

49. **COUNT 2:** 15 U.S.C. § 1692b(2). Defendant communicated with a person other than the consumer allegedly owing the debt, and stated that such consumer owes a debt. Defendant knowingly violated this section during the July 26, 2010 2:54 PM call to Susan Dorris during which it stated that Glenn Dorris owes a debt, and perhaps also during the 1 PM call that day.

50. **COUNT 3:** 15 U.S.C. § 1692b(3). Defendant communicated with a person other than the consumer allegedly owing the debt more than once, without being requested to do so by such person, and without reasonably believing that the earlier response of such person was

7

erroneous or incomplete and that such person now has correct or complete location information. Defendant violated this section during the July 26, 2010 calls to Susan Dorris.

51. **COUNT 4:** 15 U.S.C. § 1692c(b). Defendant communicated in connection with the collection of a debt with a person other than the consumer or his attorney, a credit reporting agency, the creditor, the creditor's attorney, or the attorney of the debt collector, as Defendant's 2 calls to Susan Dorris on July 26, 2010 were not otherwise permitted by law since they were not in fact made to obtain location information about Glenn Dorris.

52. **COUNT 5:** 15 U.S.C. § 1692d and § 1692d(5). Defendant caused a telephone to ring repeatedly or continuously with intent to annoy, abuse, or harass a person at the called number, and violated this section in its repeated calls to Glenn Dorris on July 26, 2010.

53. **COUNT 6:** 15 U.S.C. § 1692d and § 1692d(6). Defendant placed telephone calls without meaningful disclosure of the caller's identity during the multiple noontime calls to Glenn Dorris on July 26, 2010, and in the two calls to Plaintiff Susan Dorris on July 26, 2010. Defendant violated this section at least six times.

54. **COUNT 7:** 15 U.S.C. § 1692e and 1692e(10). Defendant used a false, deceptive, or misleading representation or means in connection with the collection of a debt, by asserting during Defendant's July 26, 2010 call to Susan Dorris that Glenn Dorris was arrogant and had no intention in paying his debt, which ARM knew was not true.

**COUNTS 8-9 - Maryland Consumer Debt Collection Act (MCDCA), CL Art. § 14-202-203**

55. **COUNT 8:** Defendant violated the MCDCA, Maryland Commercial Law Art. § 14-202(5), by disclosing to a person other than the debtor or their spouse, or to the parent of a non-minor, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information. Defendant violated this provision by calling Susan Dorris on July 26, 2010 and disclosing Glenn Dorris's account information to her and in other statements about Glenn Dorris.

56. **COUNT 9:** Defendant violated the MCDCA, Maryland Commercial Law Art. § 14-202(6), by communicating with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor. Defendant violated this provision by (1) calling Glenn Dorris repeatedly on July 26, 2010, (2) calling Glenn Dorris's mother with no legal or legitimate purpose as ARM already knew his location information, (3) disclosing Glenn Dorris's account information to Susan Dorris on July 26, 2010, (4) telling Susan Dorris that her son was arrogant and that he had no intentions of dealing with his debt, statements which ARM knew were false.

### COUNT 10 - Invasion of Privacy by intrusion into seclusion

57. Defendant invaded Plaintiff Glenn Dorris's privacy by disclosing Plaintiff's personal account information to his mother Susan Dorris, and did so even after he told her not to call his mother and the reason why it should not do so, because he was the only person on the account.

58. Defendant's conduct, as described herein, constitutes an intentional intrusion into the private place or affairs of Plaintiff.

59. Defendant's intrusion(s) would be highly offensive to a reasonable person.

60. Defendant intended to mislead, deceive, harass, annoy and/or inconvenience Plaintiff Glenn Dorris by contacting his mother Susan Dorris in order to directly or indirectly pressure Glenn Dorris, or to coerce Susan Dorris to pay a debt they knew she did not even owe.

61. Plaintiff Glenn Dorris suffered actual damages as a result of Defendant's invasion, including its acts and/or failures to act.

62. Defendant's conduct was an unlawful and actionable invasion of Plaintiff's privacy, and has damaged Plaintiff, entitling Plaintiff to an award of damages, both compensatory and punitive.

63. Defendant's invasion of Glenn Dorris's privacy was done knowingly, with malice, and/or with reckless disregard of Plaintiff's privacy, and justifies punitive a damage awards.

## RELIEF SOUGHT

### FDCPA

64. Plaintiffs incorporate all previous paragraphs as if fully stated herein, and demand:

   (1) actual damages for each separate violation of the FDCPA in each of Counts 1-7, except that Plaintiff Susan Dorris does not seek actual damages under Count 5, pursuant to 15 U.S.C. § 1692k(a)(1);

   (2) statutory damages of $1,000 for each separate violation of the FDCPA in each of Counts 1-7, except that Plaintiff Susan Dorris does not seek statutory damages under Count 5, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   (3) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

### Maryland Consumer Debt Collection Act (MCDCA)

   (4) Actual damages for each violation of the MCDCA, for each of Counts 8 and 9 to be determined by a jury.

   (5) costs and reasonable attorney's fees pursuant to MCDCA and Maryland Consumer Protection Act, CL Article, § 13-301(14) and § 13-408.

### Invasion of Privacy

   (6) Plaintiff Glenn Dorris seeks actual damages caused by Defendant's invasion of Plaintiff's privacy, and punitive damages, as determined by the jury.

WHEREFORE Plaintiff Glenn Dorris seeks $7,000 and Susan Dorris seeks $6,000 in FDCPA statutory damages, and also FDCPA actual damages to be determined by a jury (Counts 1-7), both Plaintiffs seek actual damages under the MCDCA (Counts 8 and 9), Plaintiff Glenn Dorris seeks actual and punitive damages for the invasion of his privacy by disclosure of his personal account information, to be determined by a jury (Count 10), and both Plaintiffs seek reasonable attorneys fees, costs, and for such other appropriate relief as the Court deems just and equitable, including injunctive relief to stop Defendant's conduct and enjoin Defendant's unlawful and unfair consumer debt collection practices.

## REQUEST FOR JURY TRIAL

The Plaintiffs request a jury trial for all such issues triable to a jury.

Respectfully Submitted,

*Michael C. Worsham*

Michael C. Worsham, Esq.
1916 Cosner Road
Forest Hill, Maryland 21050-2210
(410) 557-6192
Fax: (410) 510-1870

*Counsel for Plaintiffs*

June 9, 2011