IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| GLENN E. DORRIS<br>SUSAN L. DORRIS<br><br>     Plaintiffs<br><br>vs.<br><br>ACCOUNTS RECEIVABLE<br>MANAGEMENT, INC.<br><br>     Defendant | CIVIL ACTION NO.:  1:11-cv-03453-GLR |

## BRIEF IN SUPPORT OF DEFENDANT ACCOUNTS RECEIVABLE MANAGEMENT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I.    BACKGROUND

Glenn E. Dorris ("Dorris") filed suit in state court against Accounts Receivable Management, Inc. ("ARM") alleging causes of action for unfair collection practices under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (FDCPA), the Maryland Consumer Debt Collection Act (MCDCA), §14-201, et. seq., Md. Code Ann. Com. Law II. Mr. Dorris also asserted a common law invasion of privacy claim.  By virtue of the Federal question pled, ARM removed the lawsuit to this Court (DE 1).

Dorris' suit concerns ARM's efforts to collect a debt he owed to Citibank, the issuer of his Home Depot credit card.  Dorris alleges that ARM sent him a collection letter on July 9, 2010 about a debt of $2,069.86 that "was allegedly due" (Compl. ¶ 7).[1] However, Mr. Dorris' characterization of "alleged" debt was itself misleading given Mr. Dorris admission

---

[1] The Complaint is docketed at DE 2.

at his deposition that he owed the debt and "wanted to pay it in full." (Exhibit 1, Glenn Dorris Deposition at p. 35, hereinafter "Exhibit 1").

In his lawsuit, Mr. Dorris' Complaint complains about several telephone calls he received from ARM in late July and early August, 2010 (Compl. ¶¶ 9-13). In particular, Mr. Dorris takes issue with calls he received on July 26, 2010 (Compl. ¶¶ 14-21) and a call an ARM collector made on July 26, 2010 to an individual the collector later learned was Mr. Dorris' mother, and not his wife. (Compl. ¶¶ 22-28). Mr. Dorris contends that he was "very upset" that ARM allegedly disclosed his account to his mother (Compl. ¶ 28) and claims that such disclosure was an invasion of his privacy (Compl. ¶ 30).

Based on these allegations, Mr. Dorris asserts claims under the Fair Debt Collection Practices Act (FDCPA) in Counts I through VII of his lawsuit (Compl. ¶¶ 48-54). These causes of action focus on the purported disclosure of his debt to a third party (Counts I through IV); on alleged repeated telephone calls to Mr. Dorris (Count V); on the purported failure of ARM's representative to identify herself during calls to Mr. Dorris (Count VI); and on alleged misrepresentations regarding the debt during the all alleged conversation with Mr. Dorris' mother (Count VII).

Plaintiff also includes causes of action under the Maryland Consumer Debt Collection Act (MCDCA) for allegedly disclosing his debt to his mother (Count VIII) and for contacting him with a frequency as can be expected to abuse or harass him (Count IX).

Mr. Dorris also asserts a common law claim for invasion of privacy, alleging that ARM's conduct "constitutes an intentional intrusion into the private place or affairs of Plaintiff" (Compl. ¶ 58).

Based on these claims, Mr. Dorris seeks statutory and actual damages under the FDCPA [Compl. ¶ 64(1) and (2)].  He also asked for actual damages under the MCDCA [Compl. ¶ 64(4)] and actual and punitive damages for his invasion of privacy claim [Compl. ¶ 64(6)].

## II.    STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 56(a), a party is entitled to move for summary judgment on a "part of each claim or defense".  Summary judgment should be entered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c) provides that the party filing for summary judgment bears the burden to establish that judgment as a matter should be granted in its favor.  "If a party carries this burden, the Court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or a denial in the pleadings, that show a genuine issue for trial."  Gardner v. Montgomery County Teachers Federal Credit Union, ___ F.Supp. ___, 2012 WL 1994602 at *2 (D.Md. June 4, 2012), *citing* Fed.R.Civ.P. 56(e)(2).  However, a motion for summary judgment is assessed by viewing all facts and reasonable inferences in a light most favor to the opposing party.  Id., *citing* Scott v. Harris, 550 U.S. 372, 378 (2007) and Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

## III.   SUMMARY OF ARGUMENT

ARM's Motion for Partial Summary Judgment asks this Court to enter judgment as a matter of law in its favor as to Plaintiff's invasion of privacy claim (Count X).  ARM also asks that this Court determine, as a matter of law, that Plaintiff has failed to demonstrate a genuine issue of material fact as to his entitlement for actual damages under the FDCPA and

that his claim for statutory damages under the FDCPA is limited to $1,000.00 per lawsuit not $1,000.00 per violation, as alleged in the lawsuit.

ARM further argues that its liability, if any, for disclosure of the debt to Mr. Dorris' mother is excused by virtue of the FDCPA's bona fide error defense which provides that "a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from the bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. §1692k(c).  As explained below, ARM has established this defense as a matter of law through evidence adduced by the <u>Plaintiff</u> that ARM conducts extensive training for all of its collectors in compliance with the FDCPA, requires that collectors not disclose debts to third parties to comply with the FDCPA and punishes those employees who violated this strict company policy.

ARM further moves for partial summary judgment as to all of Plaintiff's claims under the MDCPA because he has failed to establish a genuine issue of material fact as to his entitlement for damages under that statute.

## IV.    PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

Count X of Plaintiff's Complaint asserts a cause of action for invasion of privacy by intrusion upon seclusion.  Mr. Dorris complains that ARM "invaded Plaintiff Glenn Dorris' privacy by disclosing Plaintiff's personal account information to his mother, Susan Dorris." (Compl. ¶ 57).  Mr. Dorris asserts that this conduct "constitutes an intentional intrusion into the private place or affairs of Plaintiff."  (Compl. ¶ 58).  In answers to interrogatories (Exhibit 2, Answer 17), Mr. Dorris confirms that his invasion of privacy claim is premised

on the claims ARM "contacted Plaintiff's mother, Susan Dorris twice on July 10, 2010 . . . and attempted to get her to pay something to settle the alleged debt."[2]

The two calls to Mrs. Dorris on July 26, 2010, one of which is disputed by ARM, are insufficient to establish a jury question for invasion of privacy.  In Household Finance Corp. v. Bridge, 252 Md. 531, 541,250 A.2d 878 (1969), the Maryland Court of Appeals reversed a judgment entered in favor of a debtor for invasion of privacy, noting that "a review of the cases wherein recovery has been allowed, indicates that there is usually present of pattern of harassment on the part of the creditor, or the communication, if not of such frequency as to constitute harassment, has been of such in nature as to possess vicious quality.  In some cases there has been both harassment as well as vicious language used in the communication" (emphasis added).  In Household Finance, the evidence ruled insufficient as a matter of law included threats to the debtor about going to jail.  The creditor also told the debtor that "we have a way of getting our money and it will ruin your reputation" and made two calls to the debtor's employer, who confronted the debtor about the calls, causing the debtor to believe that "she might lose her job."  Id. at 534.  Additionally, the collector also called the debtor's father twice, exclaiming that "somebody owed the money and someone was going to have to pay it."  Id.

The Household Finance case controls the results here.  At best, Mr. Dorris complains that ARM disclosed the debt to his mother during one of two calls and asked her to make payment on his debt.  This conduct falls well short of the pattern of harassment required to make a a *prima facie* case for invasion of privacy under controlling Maryland law.

---

[2] The record developed in this case reflects that the alleged call took place on July 26, not July 10.

**V.   PLAINTIFF HAS NOT ESTABLISH A CLAIM FOR ACTUAL DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT**

15 U.S.C. §1692k provides, in pertinent part, that a Plaintiff may recover "any actual damages sustained by such a person as a result of such failure (to comply with the FDCPA)." Plaintiff has conceded that he is not seeking actual damages for economic loss.  (Exhibit 2, Answer 6).   Instead, the Plaintiff limits his claim to non-economic damages which he describes as "annoyance, aggravation, extreme frustration."   (Exhibit 2, Answer 8).   Mr. Dorris concedes that he did not consult with any healthcare practitioner for treatment, counseling or advice regarding his complains of annoyance, frustration, and emotional distress. (Exhibit 2, Answer 16).

Mr. Dorris was examined at length at his deposition regarding his alleged emotional distress and was asked to describe his annoyance about the collection calls. Instead of focusing on ARM's conduct, he complained about the financial problems that were visited upon him by his divorce and by his mother's efforts to help him.

> Q.    Now, you say you were annoyed by the collection calls.  And first I'm going to ask you about the ones that were made to your mother.  Can you describe your annoyance?
>
> A.     Yes.  My parents are both retired.  They're doing well. Obviously this was -- the divorce was not a financial disaster I was intending it to be.  No one ever is.
>
>        My mother has a tendency to try to help.  And she does. And when she tries to give us money for things, then it causes problems with my father, thereby causing problems with our entire family.  And this created a big one.
>
> Q.    In the sense of your mother trying to help?
>
> A.    In the sense of her having half of the story.
>
> Q.    What half of a story did she have?

> A.    The half she got from Karen that I owed money, I needed to
> pay it right then.

Exhibit 1 at 66-13 to 67-10.

> Q.    Now, you also say that in Paragraph 44 you were upset.  Can
> you describe what you mean by being upset?
>
> A.    Same issue.  Now, my -- in the midst of  being a single father
> with two children seven days a week by myself, and working
> downtown and living in Bel Air and trying to deal with my job,
> that I'm overwhelmed at, I now have to go have these
> conversations with my parents where my mother is digging into
> areas of my life that she shouldn't trying to figure out how to help
> me and make something go away.

Exhibit 1 at 71-7 to 71-18.

Mr. Dorris concedes that he has no supporting medical testimony connecting with ARM's conduct to his feigned emotional distress and that he has no corroborating evidence to support his claim as no other person has information about how he was upset or annoyed. Mr. Dorris' only evidence is his own conclusory statements as set out in his answers to interrogatories that he was "annoyed, upset and frustrated" by the collection calls.  Mr. Dorris' lack of corroborating evidence of his mental distress dooms his claim.  *See*, Doe v. Chao, 306 F.3d 170, 181 (4th Cir. 2002), *aff'd* 540 U.S. 614, 124 S.Ct. 1204 (2004).  In Doe, claimants whose social security numbers were publicly disclosed during adjudicating of their Social Security claims brought an action under the Privacy Act, 5 U.S.C. §552a(g)(4)(a). The Court held that a plaintiff in a Privacy Act lawsuit must prove actual damages in order to receive the statutory minimum damages.  The Fourth Circuit went on to explain how a Plaintiff can establish an issue of fact for entitlement for a compensatory damages for emotional distress.  Specifically, one claimant's testimony that he was "greatly concerned and worried" about the disclosure of social security number, that he felt his privacy had been

invaded and that the disclosure could be "devastating" to himself and his wife was held insufficient to establish a jury issue.  The Court focused on the fact that the claimant did not produce any evidence of "tangible consequences stemming from his alleged angst over the disclosure of his (social security number). He claimed no medical or physiological treatment, no purchases of medications (prescription or over the counter), no impact on his behavior, and no physical consequences.  Further, (there was) no evidence of any kind (to) corroborate the conclusory allegations." Doe at 181.

A similar result follows here because the kind of conclusory statements exclusively relied upon by Mr. Dorris cannot support an award of compensatory damages.  *See*, Ross v. F.D.I.C., 625 F.3d 808, 818 (4th Cir. 2010), *citing* Price v. City of Charlotte, N.C., 83 F.3d 1241, 1254 (4th Cir. 1996) ("conclusory statements that the Plaintiff suffered emotional distress . . . (do not) support "an award of compensatory damages").  Mr. Dorris' conclusory testimony, when coupled with his admission at deposition that he had no change in his daily routine or behavior during the time the calls were made in the summer of 2010 compels the result that his claim for actual damages is insufficient to present a factual issue for trial.[3]

---

[3] Mr. Dorris disclaimed any change in his behavior or in his activities after the July, 2010 calls.

   Q. Is there anything that happened during that time that would change your routine pattern of  activities during the week?
   A.   July of 2010.
   Q.   Or the whole Summer.
   A.   Not off the top of my head that I can recall.
   Q.   How about your weekend activities, would  they have been the same constant through July 2010?
   A.   Yes.
   Q.   Would the same apply in August 2010 for  regular activities and your weekend activities?
   A.   Best I can recall, yes.
   Q.   Was it pretty routine like that for the  whole year of 2010?
   A.   Uh-huh.
   Q.   You have to say yes.
   A.   I'm sorry, yes.
Exhibit 1 at 78-4 to 78-22.

## VI.  PLAINTIFF'S STATUTORY DAMAGES ARE LIMITED TO A MAXIMUM OF $1,000.00

Plaintiff asserts that he is entitled to "statutory damages of $1,000.00 <u>for each separate violation</u> of the FDCPA in Counts I-VII." [Compl. ¶ 64(2)] (emphasis added). Plaintiff is mistaken. The maximum of statutory damages of $1,000.00 under the Fair Debt Collection Practices Act is up to an amount of "$1,000.00 for each lawsuit." <u>Thomas v. Smith, Dean & Associates, Inc.</u>, 2011 WL 2730787 at *3 (D.Md. July 12, 2011), *Report and Recommendation* adopted at 2011 WL 3567043 (D.Md. Aug. 10, 2011), *citing* <u>Wright v. Finance Service of Norwalk, Inc.</u>, 22 F.3d 647, 651 (6th Cir. 1994). *See also,* <u>Harper v. Better of Business Services, Inc.</u>, 961 F.2d 1561 (11th Cir. 1992) (holding FDCPA limits statutory damages to $1,000.00 per action).

Because the FDCPA limits statutory damages to a maximum of $1,000.00 per case, ARM is entitled to an order granting partial summary judgment and determining that the maximum amount of statutory damages in this case is $1,000.00.

## VII.  EVEN IF AN ARM REPRESENTATIVE DISCLOSED MR. DORRIS' DEBT TO HIS MOTHER, DEFENDANT'S LIABILITY IS EXCUSED BY THE FDCPA'S BONA FIDE ERROR DEFENSE

Under 15 U.S.C. §1692k(c) "a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to any such error." A bona fide error defense may be raised for the first time in summary judgment. *See,* <u>Smith v. Transworld Systems, Inc.</u>, 953 F.2d 1025, 1027 (6th Cir. 1992). Where a collector establishes that there is no genuine dispute as to its bona fide error defense, a Court may properly enter summary judgment in favor of the debt collector on this affirmative defense. *See,* <u>Sayyed v. Wolpoff</u>

& Abramson, LLP, 733 F.Supp.2d 635, 647 (D.Md. 2010) (granting summary judgment in favor of attorney debt collector based on bona fide error defense as to alleged misrepresentations of the debt).

In this case, the deposition testimony adduced by the Plaintiff establishes the basis of ARM's bona fide error defense and excuses its liability for disclosure of his debt to a third party as prohibited by 15 U.S.C. §1692c(b). Plaintiff's counsel asked Thomas Novak, ARM's in-house counsel to describe the training given to ARM's collectors, focusing on the collector who allegedly disclosed Mr. Dorris' debt to his mother:

> Q.      Was Ms. Ford given training by ARM?
>
> A.      Ms. Ford was given a week of classroom training, and then another week of side by side training, and Ms. Ford was given, I believe an annual FDCPA test, which is – I don't need to give the acronym for the record?  Okay.
>
> Q.      No, thank you.  Is that training similar as to what would be given most ARM employees?
>
> A.      Every ARM employee, myself included, is required to go through a week of orientation training which includes a check of FDCPA classes, and then training on how to use the system.
>
> Q.      Is there some kind of annual refresher or some other training?
>
> A.      There is an annual FDCPA test, and also quality reports.
>
> Q.      You said there's an annual FDCPA test?
>
> A.      Yes.
>
> Q.      Does that mean something that the collectors have to actually give answers to and pass?
>
> A.      Yes.
>
> Q.      Have you found anything that indicated that Ms. Ford ever

failed any test of that nature or any other test?

MR. CANTER:  Objection.  You may answer.

A.      If Ms. Ford had failed the FCDPA class, she would have been required to go through training until she passed the test.  She would not have been allowed back on the phones.

Q.      Does it happen sometimes that employees don't pass the FDCPA test, and they're given some more training and take the test again and pass it?

A.      It happens from time to time.  It's rare, but it happens.

Q.      Did it happen with Ms. Ford?

A.      Not that I'm aware of.  No.

Exhibit 3, Thomas Novak Deposition at 173-4 to 174-17, hereinafter "Exhibit 3."

Plaintiff's counsel then asked about ARM's policy for attempting to contact a third person.

Q.      Would it be ARM's policy for a collector like Ms. Ford to even attempt to xus another person, whether family member or not, when the collector already knew and had spoken to the debtor and attempted to reach the debtor?

A.      Our policy is to attempt to get debtors on the phone and not to divulge information to third parties."

Exhibit 3 at 174-18 to 175-3.

Plaintiff also deposed Linda Milton Ellis, a former ARM's collector who was terminated for violating company policy.  During Ms. Ellis' deposition, Plaintiff again asked about the training that ARM's collectors receive in compliance with the Fair Debt Collection Practices Act.

Q.      When you started to work for them, do they give you any training?

A.      Yes.

> Q.     What was the training like?
>
> A.     The training was learning how to collect.  Learning the right way to collections, learning the laws of collections, your states, who you can and who you cannot call, so, its just like, I mean, the training was for, you know, learning the Fair Debt Collection Practices Act."

Exhibit 4, Linda Ellis Deposition at 15-2 to 15-3, hereinafter "Exhibit 4."

> Q.     Ok.  Did you have annual training after the training you got when you first started?
>
> A.  Yes, you had to have training every years."

Exhibit 4 at 15-23 to 16-2.

Ms. Ellis later explained that the training became more frequent over the years.

> Q.   Ok.   Now, you testified, as I recall, that the training regiment at ARM, which is Accounts Receivable Management, actually became more frequent over the years you were there; is that correct?
>
> A.     Yes.

Exhibit 4 at 102-21 to 105-1.

Ms. Ellis went on to confirm that the most important aspects of the training was compliance with the Fair Debt Collection Practices Act and training in the restrictions on disclosing debts to third parties.

> Q.     And wouldn't it be fair to say that one of the most important aspects of the training was in compliance with the Fair Debt Collection Practices Act?
>
> A.     Yes.
>
> Q.     And when you referred to the mini-miranda, you referred to a disclosure that the Fair Debt Collection Practices Act requires you to make, correct?
>
> A.     Yes.

Q.      And when you referred to disclosures to spouses or third parties, you referred to restrictions that the Fair Debt Collection Practices Act places on collectors, correct?

A.      Yes.

Q.      And, in fact, you were trained?

A.      Yes.

Q.      I'm sorry.  You were training in those limitations and restrictions, right?

A.      Yes.

Q.      And you were trained again in those restrictions, correct?

A.      Yes.

Q.      And that training is, in fact, given to all the collectors, isn't it?

A.      Yes.

Q.      And is it fair to say that Accounts Receivable Management, the supervisors and the managers can force the restrictions imposed by the Fair Debt Collection Practices Act?

A.      Yes.

Q.      And they enforce the prohibition on disclosing the debt to third parties, don't they?

A.      Yes.

Q.      And they do that by reprimanding or taking disciplinary action against any collect who would be found to have made an improper third party disclosure, correct?

A.      Yes.

Q.      And I believe you said one of the reasons that you would conduct a three-way call would be to get a debtor's consent to talk to a third party?

A.     Yes.

Exhibit 4 at 103-2 to 104-21.

In response to Plaintiff's counsel questions regarding the circumstances of her termination, Ms. Ellis explained the procedures for collecting the type of Citibank incurred by Mr. Dorris as follows.

> You have to make sure that you were talking to the debtor. If you did have to talk to a third party, that the debtor gave you permission. Everything had to be recorded. It had to be noted. And if it wasn't noted, it didn't happen.

Exhibit 4 at 111-19 to 111-24.

> For instance, I -- on this here, they wrote me down for this. One of the calls for Citibank I said the amounts somebody owed. I forgot how much they owed, $18,257.38. I said, ok, you have a balance of $18,200 couple of cents, you know $200 -- you have $18,000.00. No, that's not the whole amount. You had to actually say the correct amount of how much owed. They written me up for that. Written me up for that. It was like because I didn't say the cents? I just said $18,000.00 – yes, ok, that should be in there. They written me up, I was talking to a debtor. And as I was talking to them, I said everything else except for the . . . I said part of the mini-miranda. They said I didn't say the whole thing. Ok. They written me up for that."

Exhibit 4 at 112-4 to 112-21.

This evidence is sufficient, as a matter of law, to establish ARM's bona fide error defense. The FDCPA does not require proof of state of the art compliance procedures. Instead, the statute merely requires "reasonable" procedures, even if the evidence establishes that the collector "could have done more" to comply with the FDCPA. Hyman v. Tate, 362 F.3d 965, 968 (7th Cir. 2004) (explaining that although collection firm could have done more to assure that it was not contacting debtors on bankrupt debts, collectors are only required to "adopt reasonable procedures"). Further, the bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather it only requires

14

reasonable precaution." <u>Kort v. Diversified Collection Servs., Inc.</u>, 394 F.3d 530, 539 (7th Cir.2005).

Applying these principles, ARM has established through the testimony of witnesses deposed by the Plaintiff that, as a matter of law, it adopted reasonable procedures to comply with the FDCPA prohibitions on disclosing debts to third parties. The fact that Mr. Dorris alleges that a collector disclosed his debt to his mother, although establishing a *prima facie* case of liability if proven, does not impose liability in this case.[4]

## VIII.   THE PLAINTIFF HAS FAILED TO ESTABLISH HIS ENTITLEMENT TO A CLAIM UNDER THE MARYLAND CONSUMER DEBT COLLECTION ACT

Counts VIII and IX of Plaintiff's Complaint assert causes of action under the Maryland Consumer Debt Collection Act. A collector's liability for damages under this statute extends to "any damages proximately caused by the violation, including damages for emotional distress or mental aguish suffered with or without accompanying physical injury." §14-203, Md. Code Ann. Com. Law II. In this case, Mr. Dorris has disclaimed any claim for economic damages. *See*, Part IV, *supra*. Additionally, Mr. Dorris' conclusory and uncorroborated claims of mental anguish are insufficient to present a jury question as to his entitlement for emotional distress damages. *See*, Part IV, *supra*.

Accordingly, for the same reason that ARM is entitled to partial summary judgment of Mr. Dorris' claim for economic distress damages under the FDCPA, it is likewise entitled to a determination that the Plaintiff has failed to adduce genuine issue of facts supporting his

---

[4] Even though the bona fide error defense was not pled in ARM's answer does not prevent this Court from considering this defense on summary judgment. "The rule in this Circuit is that affirmative defenses that were not pleaded may be raised later if there is no prejudice." <u>In Re:  Pocket Communications, Inc.</u>, 1999 WL 33457179 at *4 (Bkrtcy. D.Md. 1999), *citing* <u>Peterson v. Airline Pilots Ass'n., Intern.</u>, 759 F.2d 1161, 1164 (4th Cir. 1985). *See also*, <u>Abel v.  Kinckerbocker Realty Co.</u>, 846 F.Supp. 445, 448 (D.Md. 1994) (holding that party may assert bona fide error defense under Truth in Lending Act at summary judgment even though not specifically pled). Here, Plaintiff cannot establish any prejudice given that the Plaintiff conducted the depositions used to support the bona fide error defense and asked specific questions regarding training and compliance with the FDCPA.

emotional distress claim under state law.  Accordingly, Plaintiff's claims under the MDCPA are subject to summary judgment in favor of ARM.

## IX.    CONCLUSION

For the reasons set forth above, ARM asks that this Honorable Court grants its Motion for Partial Summary Judgment and rule, as a matter of law, that:  (1) ARM is entitled to summary judgment as to Plaintiff's claim for invasion of privacy, (2) that Plaintiff has failed to adduce sufficient facts to create a question for the jury as to his claim for actual damages under the Fair Debt Collection Practices Act, (3) that Plaintiff's claim for statutory damages under the Fair Debt Collection Practices Act is capped at $1,000.00, (4) that ARM's liability, if any, for a purported disclosure of the Plaintiff's debt to his mother is excused because of the compliance procedures followed by ARM, and (5) to grant summary judgment as to all MDCPA claims.

THE LAW OFFICES OF RONALD S. CANTER, LLC

/s/ Ronald S. Canter
Ronald S. Canter, Esquire
Bar No. 01024
200A Monroe Street, Suite 104
Rockville, Maryland 20850
Telephone:  (301) 424-7490
Facsimile:    (301) 424-7470
E-Mail:  rcanter@roncanterllc.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by Electronic Notification pursuant to ECF procedures on this 15th day of June, 2012 to:

Michael C. Worsham, Esquire
1916 Cosner Road
Forest Hill, Maryland 21050-2210
*Attorney for Plaintiff*

/s/ Ronald S. Canter
Ronald S. Canter, Esquire
*Attorney for Defendant*