IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLENN E. DORRIS,                          :

    Plaintiff,                        :

v.                                        :
                            Civil Action No. GLR-11-3453
ACCOUNTS RECEIVABLE MANAGEMENT, :
INC.,
                                :

    Defendant.                        :

                                :

## **MEMORANDUM OPINION**

THIS MATTER arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 <u>et seq.</u> (2012); Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 <u>et seq.</u> (West 2013); and common law invasion of privacy. Plaintiff Glenn Dorris ("Dorris") alleges that Defendant Accounts Receivable Management, Inc. ("ARM") made unlawful and harassing collection calls to him and his mother, Susan Dorris ("Susan"), regarding Dorris' Home Depot account. Currently pending is ARM's Motion for Partial Summary Judgment (ECF No. 32), Dorris' Motion to Strike ARM's bona fide error defense (ECF No. 38), Dorris' Cross-Motion for Summary Judgment on all counts (ECF No. 39), and Dorris' Motion for Leave to File Motion for Summary Judgment Nunc Pro Tunc (ECF No. 40).

The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. <u>See</u> Local Rule 105.6

(D.Md. 2011).   For the reasons below, the Court will rule as follows:   (1) ARM's Motion for Partial Summary Judgment will be granted in part and denied in part; (2) Dorris' Motion to Strike ARM's bona fide error defense will be granted; (3) Dorris' Cross-Motion for Summary Judgment will be granted in part and denied in part; and (4) Dorris' Motion for Leave to File Motion for Summary Judgment Nunc Pro Tunc will be summarily granted because ARM does not oppose the late filing.

## I.   BACKGROUND

In April 2005, Dorris used his Home Depot account to purchase materials for a home siding project.   At some point, the debt became delinquent and ARM began its attempt to collect the debt in July 2010.   During the course of its attempts, ARM made several calls to Dorris on his cell phone and to other numbers listed on his account.   The frequency, substance, and, in one case, existence of the calls are in dispute.

Dorris avers that from July 7, 2010 to August 6, 2010, ARM called his cell phone fifteen times.   (Pl.'s Mem. Supp. Cross-Mot. Summ. J. ["Pl.'s Cross-Mot."] at 3, ECF No. 39-1).   On July 23, 2010, an ARM employee identified as Karen Davis ("Karen") contacted Dorris regarding the debt. (7.23.10_1343pm Recording). During the call, Dorris directed Karen to call him after 11:00 a.m. or 12:00 p.m. the following Monday because he was at work. (Id.)   Dorris avers that ARM called his cell phone five times

2

that Monday, July 26, 2010, beginning at approximately 12:11 p.m. (Pl.'s Reply Supp. Summ. J. ["Pl.'s Reply"] ¶ 14, ECF No. 46). At 12:19 p.m. the same day, Karen called a number that was ultimately found to belong to Dorris' mother, Susan. (See 7.26.10_1219pm Recording). During that call, Susan eventually identified herself as Dorris' mother, and inquired about whether Karen had called regarding a "bill." (Id.) When Karen answered in the affirmative, Susan then inquired about the amount of the bill, to which Karen replied that Dorris' consent was required to discuss the matter. (Id.) Karen then attempted to obtain consent by instituting a three-way call between herself, Susan, and Dorris. (Id.) At the end of the call, however, Karen informed Susan that she reached Dorris, but that he did not want Susan to resolve "it." (Id.)

When Dorris spoke with Karen at approximately 2:32 p.m. on July 26, 2010, he informed her of his disagreement with the previous call to his mother. (7.26.10_1432pm Recording). Dorris also instructed Karen to remove all contact numbers from his file except for his cell phone number. (Id.) According to Dorris, at approximately 2:54 p.m., Karen made another call to Susan. (Compl. ¶ 23, ECF No. 2). During that call, Karen allegedly attempted to settle Dorris' debt for $900 and, while doing so, stated that Dorris was an "asshole" and "arrogant," that he "talked . . . about child support issues," and that he

3

"had no intentions of dealing with his debt." (Compl. ¶ 24-26; Susan Aff. ¶¶ 8-9, ECF No. 39-3). After refusing to settle the debt, Susan allegedly contacted Dorris to inform him of the call and, upon Dorris' request, drafted an e-mail summarizing the substance of the alleged call. Thereafter, Dorris contacted ARM to speak with a manager regarding Karen's alleged second call to Susan. (7.26.10_1509pm & 7.26.10_1511pm Recordings).

On June 9, 2011, Dorris filed suit against ARM in the Circuit Court for Hartford County, Maryland. ARM timely removed the action to this Court on November 30, 2011. The ten-count Complaint alleges violations of the FDCPA, MCDCA, and common law invasion of privacy by intrusion upon seclusion. (See ECF No. 2). Dorris seeks $7,000 in FDCPA statutory damages, actual damages under the FDCPA and the MCDCA, actual and punitive damages for invasion of privacy, and reasonable attorneys' fees and costs. (Compl. at 10).

At the conclusion of discovery, the parties filed the pending cross-motions for summary judgment. ARM seeks partial summary judgment, and Dorris seeks summary judgment on all counts. Dorris also filed a Motion to Strike ARM's bona fide error defense and a Motion for Leave to File Motion for Summary Judgment Nunc Pro Tunc.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A "material fact" is a fact that might affect the outcome of a party's case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

Moreover, "when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they may be probative of the non-existence of a factual dispute." Akalwadi v. Risk Mgmt. Alts., Inc., 336 F.Supp.2d 492, 500 (D.Md. 2004) (citation and internal quotation marks omitted).  In ruling on these motions, the Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." Masson v. New Yorker

_Magazine, Inc._, 501 U.S. 496, 520 (1991) (citing _Anderson_, 477 U.S. at 255).

**B.     Analysis**

> **1.     FDCPA Claims (Counts I-VII)**

The purpose of the FDCPA is to (1) eliminate abusive debt collection practices, (2) ensure debt collectors who refrain from using abusive practices are not competitively disadvantaged, and (3) promote consistent state action to protect consumers against debt collection abuses.   15 U.S.C. § 1692(e).   The FDCPA is a strict liability statute that requires a plaintiff to prove only one violation of the Act to trigger liability.   _Spencer v. Hendersen-Webb, Inc._, 81 F.Supp.2d 582, 590-91 (D.Md. 1999) (citations omitted).   Moreover, the FDCPA "covers debt collectors who regularly collect or attempt to collect . . . [consumer] debts owed or due." _Akalwadi_, 336 F.Supp.2d at 500 (second alteration in original) (internal quotation marks and citation omitted).   It is undisputed that, at all times relevant to this action, ARM was a "debt collector," as defined in § 1692a(6), and that Dorris' Home Depot account was considered a "debt" under § 1692a(5).

> **a.     Disputed Second Call to Susan Dorris**

With the exception of Count V, each of Dorris' FDCPA claims rely entirely, or partially, upon an alleged call that Karen

made to Susan on July 26, 2010, at approximately 2:54 p.m. (the "second call").

Dorris avers that the second call is not in dispute for summary judgment purposes because ARM propounded a "bare argument" regarding the absence of a second call. (Pl.'s Cross-Mot. at 8; Pl.'s Supplement to Cross-Mot., ECF No. 68). Similarly, Dorris avers that ARM failed to refute Susan and Dorris' affidavits, the corroborating e-mail to Dorris that afternoon, and Dorris' prompt call to ARM's manager regarding the alleged call. (Id.) While it is true ARM argues a second call does not exist, the argument can hardly be considered "bare."

To support its position, ARM provided the affidavit of Thomas Novak, ARM's Executive Vice President and in-house counsel, asserting that the absence of a second call from the record of outgoing and incoming telephone calls made by ARM collectors on July 26, 2010, contributes to his determination that the call does not exist. (See Novak Aff. at 2-4, ECF No. 42-3). Novak's affidavit is corroborated by ARM's collection notes and computer generated search for Susan's number. (See Novak Aff. Exs. D & E). Both documents proffer an omission of the second call. Viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party, ARM, the Court finds that this evidence creates a genuine

7

dispute of material fact.  Moreover, Dorris' evidence refuting ARM's position challenges the completeness of ARM's records.

As a result, summary judgment is inappropriate for any FDCPA claim premised upon this disputed call.  Therefore, Dorris' Motion for Summary Judgment on Counts I-IV and VI, as to the second call, is DENIED.  As to Count VII, Dorris' Motion is DENIED in its entirety.

### b.  Remaining FDCPA Claims

Having ruled on the dispute regarding the existence of a second call, the Court now reviews Dorris' FDCPA counts solely on the basis of the remaining July 26, 2010 calls.  Namely, each of the calls to Dorris and the first call to Susan.

### i.  15 U.S.C. § 1692b (Counts I-III)

Counts I through III allege violations of subsections 1692b(1)-(3).  Section 1692b, however, only concerns communications that seek to acquire location information from third parties.  This section provides, in pertinent part, that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall" engage in, or abstain from, various actions enumerated in the subsections.  15 U.S.C. § 1692b. Therefore, the success of Counts I-III hinge upon the question of whether Karen contacted Susan for the purpose of obtaining location information on Dorris.

8

Under the FDCPA, "location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." Id. § 1692a(7). The recording of the first call to Susan does not lead the Court to conclude that Karen contacted Susan for the purpose of acquiring location information on Dorris. Immediately after Susan answered the phone, Karen asked to speak with Dorris, and conversed with Susan as though she were his wife. (7.26.10_1219pm Recording at 00:05-00:24). This indicates that Karen called in an attempt to contact Dorris at a number she already had in his file, not to acquire location information. Moreover, the only time Karen requested an address was for verification purposes. Specifically, she attempted to verify Dorris' address and the last four digits of his social security number. (Id. at 00:25-00:41). This is the same information Karen acquired from Dorris during the July 23, 2010 call. (7.23.10_1343pm Recording at 00:33-00:40, 00:58-01:07). The fact that Karen requested the same information when speaking directly with Dorris suggests that such requests are associated with confirming the debtor's account, not acquiring location information.

As a result, Dorris' Motion for Summary Judgment, as to Counts I-III, is DENIED. Any portions of Counts I-III that rely upon the first call to Susan fail as a matter of

law.   Conversely,  because  the  existence  and  substance  of  the
second  call  are  in  dispute,  the  portions  of  Counts  I-III  that
are premised upon that call will proceed to trial.

### ii.  15 U.S.C. § 1692c (Count IV)

In  Count  IV,  Dorris  alleges  that  ARM  violated  § 1692c(b)  by
contacting  Susan  twice  on  July 26,  2010,  and  disclosing  Dorris'
debt  to Susan  on  both  occasions.   ARM  denies  the  disclosures.

Section  1692c(b)  provides  that  a  debt  collector  may  not
communicate  with  third  parties  in  connection  with  the  collection
of  any debt,  except  to  obtain  location  information,  "without  the
prior  consent  of  the  consumer  given  directly  to  the  debt
collector,  or  the  express  permission  of  a  court  of  competent
jurisdiction,  or  as  reasonably  necessary  to  effectuate  a
postjudgment judicial remedy."  15 U.S.C. § 1692c(b).   For FDCPA
purposes,  a  "communication"  is  defined  as  "the  conveying  of
information  regarding  a  debt  directly  or  indirectly  to  any
person through any medium."  Id. § 1692a(2).

The  recording  of  the  first  call  to  Susan  on  July 26,  2010,
clearly  reflects  that  Karen  stated  she  was  "calling  in  reference
to  [an]  account"  that  was  "forwarded  to  [her]  office,"  and  when
Susan  asked  whether  Karen  was  calling  "about  a  bill,"  Karen  said

"yes."[1]  (7.26.10_1219pm Recording at 01:02-01:13).  Moreover, at the end of the call, Karen stated that Dorris "[did] not want [Susan] to resolve it."  (Id. at 5:19-5:26).  ARM's argument that this does not constitute a disclosure of Dorris' debt is unpersuasive.  Therefore, pending the outcome of its alternate argument, ARM may be held liable for violating § 1692c(b) during the first call to Susan on July 26, 2010.

ARM alternatively avers that even if the Court finds Karen disclosed the debt to Susan during the first call, its liability is excused by the bona fide error defense ("BFE defense").  Dorris moves to strike the BFE defense, pursuant to Rule 12(f), because ARM: (1) raised the defense for the first time on summary judgment,[2] (2) failed to previously plead this defense in a separate suit filed by Dorris' counsel, (3) failed to amend its answer to include the defense, and (4) precluded Dorris from discovery on the defense under the auspices that it would not be used in this action.  According to Dorris, the admission of this defense would be prejudicial.  In response, ARM avers that Dorris "opened the door" to the defense by asking questions about ARM's training policies during ARM's deposition,

---

[1] It is important to note that Karen chose to answer affirmatively instead of abstaining from answering Susan's question.

[2] As noted below, Dorris was not placed on notice of this defense for the first time on summary judgment, but during the deposition of Thomas Novak.

and failing to object when further information was revealed on cross-examination.

The BFE defense is codified in § 1692k(c), which provides a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense is an affirmative defense for which the defendant bears the burden of proof on summary judgment. See Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) (citations omitted).

As a preliminary matter, several courts have permitted debt collectors to raise the BFE defense for the first time on summary judgment upon a finding that the plaintiff would not be prejudiced by its admission. See, e.g., Abel v. Knickerbocker Realty Co., 846 F.Supp. 445, 448-49 (D.Md. 1994) (Truth in Lending Act); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1030 (6th Cir. 1992); Puglisi v. Debt Recovery Solutions, LLC, 822 F.Supp.2d 218, 227 n.9 (E.D.N.Y. 2011); Shapiro v. Haenn, 222 F.Supp.2d 29, 42-43 (D.Me. 2002).

Dorris avers that he has been prejudiced by ARM's failure to assert the BFE defense prior to its Motion primarily because ARM precluded discovery of its applicable policies and

12

procedures by repeatedly asserting its intention not to use the defense. The record reflects such preclusion. In a February 27, 2012 letter to Dorris' counsel, ARM, in reference to interrogatory eighteen, stated that information regarding its procedures were irrelevant in determining liability under the FDCPA. (LR 104.7 Certificate for Pl.'s Mot. to Compel Disc. Ex. 4, at 2, ECF No. 15-4). In the same letter, ARM stated that no affirmative defenses had been asserted in this matter. (Id.) Similarly, in its March 23, 2012 opposition to Dorris' motion to compel, ARM stated that Dorris' requests for information regarding its policies, procedures, and training manuals were irrelevant because it had not raised the BFE defense. (Id. Ex. 8, at 4). Subsequent to these denials, ARM first informed Dorris of its intent to use the defense during the May 4, 2012 Novak deposition. (See Novak Dep. 183:21, 184:1-21, 185:1-5, May 4, 2012, ECF No. 42-1).

The BFE defense, however, requires a preponderance of the evidence regarding the procedures reasonably adapted to avoid the error in question. Here, that error is the communication of a consumer debt to a third party. A substantial portion of the deposition testimony regarding ARM's policies and procedures is generalized. (See Novak Dep. 173:4-21, 174:1-17, ECF No. 32-4; Ellis Dep. 15:2-25, 16:1-25, 102:21-25, 103:1-11, May 10, 2012, ECF No. 42-2; Ellis Dep. 111:5-18, 25, 112:1-24, ECF No. 32-5).

The portion of the testimony regarding training related to third party communications reveals that (1) the collectors were trained in the "limitations and restrictions" of the FDCPA, (2) ARM enforced the restrictions through reprimands, and (3) consent was required to speak with third parties. (See Novak Dep. 174:18-21, 175:1-3; Ellis Dep. 103:12-25, 104:1-25, 105:7-14, 111:19-21). Permitting ARM to proceed with the BFE defense limits the scope of Dorris' rebuttal of this defense to the depositions. This limitation is especially prejudicial to Dorris, considering the Court's previous denials of his motions to compel documents related to this defense. ARM, therefore, is precluded from asserting the BFE defense in this matter.

As a result, the Court GRANTS Dorris' Motion to Strike ARM's BFE Defense, GRANTS Dorris' Motion for Summary Judgment, as to the first call to Susan, and DENIES ARM's Motion for Partial Summary Judgment as to this defense.

### iii. 15 U.S.C. § 1692d (Counts V & VI)

In Count V, Dorris alleges that ARM violated §§ 1692d and 1692d(5) by repeatedly calling him on July 26, 2010. Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Similarly, § 1692d(5) provides that "[c]ausing a telephone to ring or engaging any person in

14

telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number[]" is a violation of this section.  Id. § 1692d(5).

Dorris concedes there may be a "legitimate" dispute of material fact, as to § 1692d(5), regarding ARM's intent in calling him, but avers that summary judgment should be granted in his favor because ARM violated § 1692d.[3]  According to Dorris, the dispute arising under § 1692d(5) does not impact the broad application of § 1692d because it only requires a showing of behavior that constitutes conduct the natural consequence of which is to harass.  "Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls."  Akalwadi, 336 F.Supp.2d at 505.

Dorris avers that, on July 26, 2010, Karen first called him "multiple times, about a minute apart, including twice without leaving any voice message, the natural consequence of which is to harass the called party."  (Pl.'s Cross-Mot. at 12).  The record, however, shows varying accounts of the noontime calls.  ARM's collection notes indicate a call at 12:12 p.m. (Novak Aff.

---

[3] ARM avers that Count V should only be analyzed within the confines of § 1692d(5) because Dorris failed to allege a violation of § 1692d in his Complaint. (Def.'s Opp'n at 17 n.3, ECF No. 42).  Contrary to ARM's assertion, however, paragraph 52 of the Complaint alleges both provisions.  (Compl. ¶ 52).

Ex. D)[4] and Dorris' Sprint bill indicates one call at 12:20 p.m.

(Pl.'s Cross-Mot. Ex. 8, at 6, ECF No. 39-8).[5] The discrepancy

precludes summary judgment on this basis.

Moreover, Dorris avers that the first call to Susan is

"fundamentally harassing," and that the disputed second call to

_____

[4] The notes also reflect five calls, one to a different phone number per minute between 12:14 and 12:17 p.m. These numbers, however, are not reflected as Dorris' cell phone number, which ends in 8508.

[5] Dorris relies upon ARM's phone records (see Pl.'s Cross-Mot. Ex. 9, ECF No. 39-9) to support Counts V and VI. ARM argues that the records are inadmissible because they were not authenticated. Dorris avers that ARM authenticated the phone records during deposition, and adopted the records by utilizing them as an exhibit to the Novak affidavit. Based upon the record before the Court, there is no indication of authentication during ARM's deposition. (See ECF Nos. 32-4, 42-1). Furthermore, the Novak affidavit only explicitly authenticates page ten of the phone records. (See ECF No. 42-8). The 2010 amendments to Rule 56, however, "eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated." Akers v. Beal Bank, 845 F.Supp.2d 238, 243 (D.D.C. 2012) (internal quotation marks and citation omitted); see also Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc., -- F.Supp.2d --, No. DKC-11-1382, 2013 WL 451640, at *1 n.2 (D.Md. Feb. 5, 2013). Pursuant to the amendments, the proponent has an opportunity to show that the disputed material "would be admissible in evidence." Fed.R.Civ.P. 56(c)(2) (emphasis added); see also Advisory Committee Notes (2010 amendments) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated"). Dorris' argument that the phone records would be admissible as an admission of a party-opponent is unavailing. Therefore, the Court will not consider the phone records on summary judgment because, at this juncture, Dorris has not met his burden of proof regarding the admissibility of the records. Moreover, even if the phone records were considered, they would not be dispositive of the issues in Counts V and VI because it also conflicts with the varying accounts of the noontime calls. (See Pl.'s Cross-Mot. Ex. 9, at 6) (showing calls at 12:11 p.m., 12:12 p.m., and 12:13 p.m.).

Susan is "very harassing and abusive." (Pl.'s Cross-Mot. at 12).
Whether the alleged calls constitute harassment, however, is a
question of fact for the jury.  See Akalwadi, 336 F.Supp.2d at
506.

In Count VI, Dorris first argues that ARM violated §
1692d(6)[6] by failing to provide meaningful disclosure of the
caller's identity in allegedly twelve calls made to Dorris.  In
his Reply, Dorris reduces the scope of the alleged calls to the
"multiple noontime calls" to Dorris on July 26, 2010, and the
two calls to Susan on the same day.  (Pl.'s Reply at 20).
Second, Dorris avers that ARM failed to meaningfully disclose
itself when Karen contacted Susan, Dorris, and his voicemail
because the use of an alias "would not be meaningful to anyone
who does not already know the alias." (Id. at 20-21).

Dorris' arguments fail, however, because the frequency of
the calls to Dorris are in dispute, the substance of the
voicemails upon which Dorris rely are unknown, and the existence
of the second call to Susan is in dispute.  Moreover, the use of
an alias is permitted because a debt collector is only required
to disclose the agency name.[7]

---

[6] This section provides that "the placement of telephone
calls without meaningful disclosure of the caller's identity"
constitutes a violation of § 1692d.

[7] See, e.g., Torres v. ProCollect, Inc., 865 F.Supp.2d 1103,
1105 (D.Colo. 2012) (stating "the only way for an identity
disclosure to be meaningful to a consumer is if it discloses the

Accordingly, Dorris' Motion for Summary Judgment, as to Counts V and VI, is DENIED.

### c.  **Actual Damages**

It is undisputed that Dorris' claim for actual damages is limited to non-economic damages.  In its Motion for Summary Judgment, ARM avers that Dorris failed to establish a claim for actual damages under the FDCPA because his conclusory emotional distress allegations lack medical testimony and corroborating evidence.  Dorris counters that medical testimony is not required, and that the FDCPA permits a jury to determine the value of his damages.

The FDCPA permits a plaintiff to recover "any actual damage sustained" as a result of a debt collector's violative conduct. 15 U.S.C. § 1692k(a)(1).  Actual damages under the FDCPA include damages for emotional distress.  See Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,109 (Dec. 13, 1988).  There is no Fourth Circuit precedent that addresses the question of what constitutes a sufficient showing of emotional distress under the FDCPA.  The Fourth Circuit, however, has

---

name of the debt collection company"); Beeders v. Gulf Coast Collection Bureau, 796 F.Supp.2d 1335, 1339 (M.D.Fla. 2011) ("FDCPA Section 1692d(6) does not prohibit a debt collection agency employee from using an alias during a telephone call, as long as the employee accurately discloses the name of the debt collection agency and explains the nature of its business.") (citations and internal quotation marks omitted).

analyzed this question under other causes of action.  See, e.g.,

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 240-41 (4th

Cir. 2009) (Fair Credit Reporting Act); Doe v. Chao, 306 F.3d

170, 179-82 (4th Cir. 2002), aff'd 540 U.S. 614 (2004) (Privacy

Act); Crawford v. Coll. Life Ins. Co. of Am., No. 86-3088, 1987

WL 38792, at *3-4 (4th Cir. October 21, 1987) (42 U.S.C. §

1983).  Of particular import is Doe, due to its factual

similarity with the emotional distress Dorris alleges in this

case.

In Doe, the Fourth Circuit made clear that to preclude

summary judgment on the issue of compensatory emotional distress

damages, a plaintiff must produce a showing of evidence that is

"sufficiently articulated," not conclusory.  306 F.3d at 180

(citation omitted).[8]  The Doe appellant sought compensation from

the alleged emotional distress he suffered as a result of the

public disclosure of his social security number.  In reversing

the district court, the Fourth Circuit held that appellant's

testimony that he was, inter alia, "greatly concerned and

worried" and "torn . . . all to pieces" failed to produce

sufficient evidence to support his entitlement to actual

damages.  Doe, 306 F.3d at 181-82.

---

[8] Doe also enumerates several factors a court may consider,
including "the need for medical, psychological, or psychiatric
treatment, the presence of physical symptoms, loss of income,
and impact on the plaintiff's conduct and lifestyle."  306 F.3d
at 180.

Similarly, Dorris alleges that ARM's actions caused him "extreme annoyance and frustration and emotional stress." (Compl. ¶ 45). During his deposition, Dorris (1) described his annoyance with the family discord caused by ARM's alleged violations, (2) testified there was no change in his routine during July 2010, or any other time during that year, and (3) stated that the time he spent addressing ARM's alleged violations constituted his "[p]rimary actual damages" because his time is "everything." (Dorris Dep. 66:13-22, 67:1-10, 71:7-22, 72:1-18, 78:4-21, 79:9-21, 80:2-3, May 1, 2012, ECF No. 32-2). Moreover, Dorris testified that no other individuals had information to corroborate his annoyance during the time in question. (Dorris Dep. 68:15-18).

Dorris' lack of supporting medical testimony is not automatically dispositive of this issue as there is no indication that medical corroboration is required to procure compensatory damages on the basis of emotional distress. Dorris' claim for actual damages, however, fails in other respects. None of Dorris' testimony establishes, at a minimum, an impact on his behavior, physical condition, or any other indicator of emotional distress. At best, ARM's alleged acts constituted an inconvenience in Dorris' life, not an actual injury. As a result, Dorris failed to produce evidence

sufficient to preclude summary judgment in ARM's favor.[9]  Cf. Robinson, 560 F.3d at 240-41 (concluding that the plaintiff "sufficiently articulated and demonstrated the emotional distress she experienced" by presenting evidence that her "mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss").

Accordingly, ARM's Motion for Partial Summary Judgment, as to actual damages, is GRANTED.

### d.  Statutory Damages

ARM also avers that Dorris is not entitled to statutory damages of $1,000 for each FDCPA violation, as alleged in paragraph 64(2) of the Complaint, because the statutory maximum is $1,000 per case.  Dorris counters that permitting damages of $1,000 per violation serves as a deterrent from future violations, and that the plain language of the statute supports this construction.  The Court disagrees.

---

[9] To be clear, the Court is not suggesting that a plaintiff's testimony can never establish an entitlement to compensatory damages for emotional distress.  In fact, the Fourth Circuit specifically stated the opposite in Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 503 (4th Cir. 2007) (stating "although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements") (alteration in original) (citations and internal quotation marks omitted).

Subsection 1692k(a)(2)(A) governs the amount of statutory damages permitted under the FDCPA.  Specifically, the subsection provides that statutory damages "in the case of any action by an individual" shall not "exceed[] $1,000."   15 U.S.C. § 1692k(a)(2)(A) (emphasis added).  This language clearly supports a statutory maximum of only $1,000 per case.  See, e.g., Spencer, 81 F.Supp.2d at 594 (stating debt collectors are liable for statutory damages "up to $1,000 per proceeding").[10]

Accordingly, ARM's Motion for Partial Summary Judgment is GRANTED.  The maximum amount of statutory damages available in this case is $1,000.

## 2.   MCDCA Claims (Counts VIII-IX)

ARM seeks summary judgment on Dorris' MCDCA claims because he has failed to establish a genuine issue of material fact regarding his entitlement to actual damages under the statute. For the reasons outlined in Section II(B)(c) supra, ARM's Motion for Partial Summary Judgment is GRANTED.

---

[10] See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605, 1609 (2010) (citation omitted) ("A court may also award 'additional damages,' subject to statutory cap of $1,000 for individual actions . . . ."); Harper v. Better Bus. Servs., Inc., 961 F.2d 1561, 1563 (11th Cir. 1992) ("[we] agree with the district court that 'the plain language of section 1692k[] provides for maximum statutory damages of $1,000.'"); Donahue v. NFS, Inc., 781 F.Supp. 188, 191 (W.D.N.Y. 1991) (citations omitted) ("[r]ecently several federal courts . . . have held that § 1692k only authorizes a maximum award of $1,000.00 additional damages per lawsuit, irrespective of the number of violations.").

### 3.   Invasion of Privacy (Count X)

Both parties move for summary judgment on Dorris' invasion of privacy by intrusion upon seclusion claim.  Under Maryland law, the "elements of the tort are an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person."  Gamble v. Fradkin & Weber, P.A., 846 F.Supp.2d 377, 383 (D.Md. 2012) (citation omitted); see also Bailer v. Erie Ins. Exch., 687 A.2d 1375, 1380-81 (Md. 1997).

The parties disagree on whether Household Fin. Corp. v. Bridge, 250 A.2d 878 (Md. 1969), applies to this case.  The Court finds that it does.  In Household Fin., the Maryland Court established two factors to be considered in determining whether the evidence is sufficient to establish a jury question for invasion of privacy:  (1) whether the frequency of the communication indicates a pattern of harassment; or, if the communication is "not of such frequency as to constitute harassment," (2) whether the communication possesses a "vicious quality."  Id. at 884; see also Summit Loans, Inc. v. Pecola, 288 A.2d 114, 114-15 (Md. 1972).

Here, Dorris' invasion of privacy claim is premised upon the alleged calls ARM made to Susan on July 26, 2010.  (See Compl. ¶¶ 57-63; Pl.'s Answers to ARM's Interrogs. 17, ECF No. 32-3).  The frequency of the calls upon which Dorris relies is

not sufficient to establish a jury question as a matter of law for this claim because it is only premised upon two alleged calls. Therefore, the remaining question is whether the content of ARM's alleged communications with Susan on that day is of such "vicious quality" that it would be considered highly offensive to a reasonable person.

As to the first call, there is no evidence in the record that would lead the Court to answer that question affirmatively. The call occurred shortly after noon, and there is nothing in the recording that indicates the call was conducted in a highly offensive manner. Conversely, as previously discussed in Section II(B)(1)(a) supra, the existence of the alleged second call to Susan is a material dispute. According to Dorris, the second call occurred after Dorris explicitly told ARM not to contact his mother, contained foul language and name calling, and consisted of attempts to settle Dorris' debt despite previous discussions instructing ARM to refrain from such activity. The Court finds that these allegations raise a genuine dispute of material fact as to whether this conduct would be highly offensive to a reasonable person.

Accordingly, as to Count X, the Court DENIES both Motions.

### III. CONCLUSION

For the foregoing reasons, ARM's Motion for Partial Summary Judgment (ECF No. 32) is DENIED in part as to Count X, DENIED as to the BFE defense, and GRANTED on all other grounds. Dorris' Cross-Motion for Summary Judgment (ECF No. 39) is GRANTED in part as to Count IV and DENIED as to all other Counts. Dorris' Motions to Strike ARM's bona fide error defense (ECF No. 38), and for Leave to File Motion for Summary Judgment Nunc Pro Tunc (ECF No. 40) are GRANTED. For the remaining claims, Counts I-IV, VII, and X are limited to the alleged second call to Susan. Counts V and VI will proceed to trial without restriction.

Entered this 22nd day of March, 2013

_____/s/_____
George L. Russell, III
United States District Judge